**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.  1:18-cv-00249

BRICE FITCH

    Plaintiff,

v.

DIVERSIFIED CONSULTANTS, INC.,

    Defendant.

## COMPLAINT

Plaintiff, BRICE FITCH, by and through his attorneys, SULAIMAN LAW GROUP, LTD., for his complaint against Defendant, DIVERSIFIED CONSULTANTS, INC., states as follows:

### NATURE OF THE ACTION

1. This is an action brought by a consumer seeking redress for violation(s) of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. and the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction exists over the Fair Debt Collection Practices Act claim(s) under 15 U.S.C. § 1692k(d) and 28 U.S.C. §§ 1331 and 1337.

3. Subject matter jurisdiction exists over the Telephone Consumer Protection Act claim(s) under 28 U.S.C. §§ 1331 and 1337.

4. Venue is proper under 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to the claims took place in the District of Colorado.

## PARTIES

5. BRICE FITCH ("Plaintiff") is a natural person, over 18-years-of-age, who at all times relevant resided at the property commonly known as 2155 South Havana Street, Aurora, Colorado 80014.

6. Fitch is a "consumer" as defined by 15 U.S.C. § 1692a(3).

7. DIVERSIFIED CONSULTANTS, INC. ("DCI"), a telecom-specific collection company, specializes in the bad debt recovery of wireless, landline, cable, satellite, utilities, and security arenas. It offers third party collection and pre-collection services; and resolves customers' delinquency and dispute issues. The company was founded in 1992 and is headquartered in Jacksonville, Florida.

8. DCI is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

9. DCI uses instrumentalities of interstate commerce and the mail in its business – the principal purpose of which is the collection of debt owed or due or asserted to be owed or due another.

## FACTUAL ALLEGATIONS

10. Fitch started electric and/or gas service(s) with Xcel Energy.

11. Upon information and belief, Fitch provided Xcel Energy with his cellular telephone number ending in 5214 at the time he started electric and/or gas service(s) with Xcel Energy.

12. Fitch accrued a past due balance.

13. Fitch's past due balance was placed with DCI for collection activities.

14. DCI began placing collection calls to Fitch.

15. On December 22, 2017, Fitch answered a collection call from DCI, Fitch demanded that they stop calling, and requested that future communication be made in writing.

16. When Fitch answered the aforementioned collection call from DCI, he was greeted by a pause, click and dead air before being connected to a live representative.

17. Fitch's demand that DCI cease calls to his cellular telephone fell on deaf ears as DCI continued to place calls to Fitch's cellular telephone 3-4 times per week.

18. In total, DCI placed no less than 15 calls to Fitch's cellular telephone after he asked that the calls cease.

19. At all times relevant, Fitch was the sole operator, possessor, and subscriber of the cellular telephone number ending in 5214.

20. At all times relevant, Fitch was financially responsible for his cellular telephone equipment and services.

## DAMAGES

21. DCI's unconsented-to calls have severely disrupted Fitch's everyday life and overall well-being.

22. DCI's unconsented-to calls have resulted in intrusion and occupation of Fitch's cellular services, thus impeding receipt of other calls.

23. DCI's unconsented-to calls have resulted in unnecessary depletion of Fitch's cellular battery requiring him to incur electricity charges to recharge his cellular telephone.

24. DCI's telephone harassment campaign and illegal collection activities have caused Fitch actual harm, including but not limited to, invasion of privacy, nuisance, loss of subscribed minutes, intrusion upon and occupation of Fitch's cellular telephone capacity, wasting Fitch's time, the increased risk of personal injury resulting from the distraction caused by the phone calls, decreased work productivity, aggravation that accompanies unsolicited telephone calls, emotional distress, mental anguish, anxiety, loss of concentration, diminished value and utility of telephone equipment and telephone subscription services, the loss of battery charge, and the per-kilowatt electricity costs required to recharge his cellular telephone as a result of increased usage of his telephone services.

25. Concerned about the violations of his rights and invasion of his privacy, Fitch sought counsel to file this action to compel DCI to cease its unlawful conduct.

## COUNT I – VIOLATION OF THE
## FAIR DEBT COLLECTION PRACTICES ACT

26. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

27. Fitch's past due balance is a "debt" as defined by 15 U.S.C. § 1692a(5).

28. DCI is attempting to collect a debt used for "personal purpose" as defined by 15 U.S.C. § 1692a(5).

   **a.   Violation(s) of 15 U.S.C. § 1692d(5)**

29. Section 1692d(5) prohibits a debt collector from causing a telephone to ring continuously with the intent to annoy, abuse, or harass.

30. DCI violated 15 U.S.C. §1692d(5) by making no less than 15 collection calls to Fitch's cellular telephone over a 34 day period from December 22, 2017 to January 25, 2018, despite having been told to stop calling.

31. Fitch may enforce the provisions of 15 U.S.C. § 1692d(5) pursuant to section k of the Fair Debt Collection Practices Act (15 U.S.C. § 1692k) which provides "any debt collector who fails to comply with any provision of [the Fair Debt Collection Practices Act] with respect to any person is liable to such person in an amount equal to the sum of -

    (1) any actual damage sustained by such person as a result of such failure;

    (2)

        (A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000.00; or

    (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with reasonable attorney's fees as determined by the court.

    WHEREFORE, Fitch requests the following relief:

    a. find that DCI violated 15 U.S.C. §§ 1692d(5);

    b. award actual, and statutory damages, and costs of this action including expenses together with attorneys' fees as determined by this Court; and

    c. grant any other relief deemed appropriate and equitable.

## COUNT II – VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT

32. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

5

33. DCI placed or caused to be placed non-emergency calls, including but not limited to the aforementioned unconsented-to calls, to Fitch's cellular telephone number ending in 5214 utilizing an automatic telephone dialing system ("ATDS") without Fitch's consent in violation of 47 U.S.C. §227 (b)(1)(A)(iii).

34. In a 2003 declaratory ruling the Federal Communications Commission ("FCC") concluded that equipment which has the capacity to "store or produce numbers and dial those numbers at random, in sequential order, from a database of numbers" qualifies as an ATDS under the statute. 18 F.C.C.R. 14014, 14091-93 (2003).

35. In 2012, the FCC stated that a predictive dialer included "any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." 27 F.C.C.R. at 15392 n. 5 (2012).

36. In its Order, the FCC "reiterate[d] that predictive dialers, as previously described by the commission, satisfy the TCPA's definition of an 'autodialer.'" *Id*.

37. Upon information and belief, based on the lack of prompt human response during the aforementioned call Fitch answered, DCI employed a predictive dialer to place calls to Fitch's cellular telephone number ending in 5214

38. Upon information and belief, the predictive dialing system employed by DCI transfers the call to a live representative once a human voice is detected, thus resulting in a pause after the called party speaks into the phone.

39. DCI violated the TCPA by placing no less than 15 phone calls to Fitch's cellular telephone number ending in 5214 from December 22, 2017 through the January 25, 2018 utilizing an ATDS without Fitch's consent.

40. As pled above, any previous consent, if any, was revoked by Fitch on December 22, 2017; and therefore, DCI did not have consent to place calls to Fitch's cellular telephone number ending in 5214.

41. As pled above, Fitch was severely harmed by DCI's collection calls to his cellular telephone.

42. Upon information and belief, DCI has no system in place to document and archive whether it has consent to continue to contact consumers on their cellular telephones.

43. Upon information and belief, DCI knew its collection practices were in violation of the TCPA, yet continued to employ them to increase profits at Fitch's expense.

44. At all times relevant, DCI acted through its agents, employees, and/or representatives.

45. As a result of DCI's violations of 47 U.S.C. § 227 *et seq.*, Fitch is entitled to receive no less than $500.00 in statutory damages, for each and every violation.

46. As a result of DCI's *knowing and willful violations* of 47 U.S.C. § 227 *et seq.*, Fitch is entitled to receive no less than $1,500.00 in treble damages, for each and every violation.

WHEREFORE, Fitch requests the following relief:

a. find that DCI violated the TCPA;

b. enjoin DCI from placing any further calls to Fitch's cellular telephone in the future;

c. award statutory damages of at least $500.00, and treble damages of $1,500.00, for each and every violation; and

        d.        grant any other relief deemed appropriate and equitable.

**Plaintiff demands trial by jury.**

January 31, 2018                                                         Respectfully submitted,

                                                                              */s/ Joseph Scott Davidson*

                                                                              Joseph Scott Davidson
                                                                              Mohammed Omar Badwan
                                                                              **SULAIMAN LAW GROUP, LTD.**
                                                                              2500 South Highland Avenue
                                                                              Suite 200
                                                                              Lombard, Illinois 60148
                                                                              +1 630-575-8181
                                                                              jdavidson@sulaimanlaw.com
                                                                              mbadwan@sulaimanlaw.com

                                                                              *Counsel for Brice Fitch*