**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:18-cv-00249-CMA-MEH

BRICE FITCH

      Plaintiff,

v.

DIVERSIFIED ADJUSTMENT SERVICE, INC.,

      Defendant.

---

**FIRST AMENDED COMPLAINT**

---

      NOW COMES Plaintiff, BRICE FITCH, by and through his attorneys, SULAIMAN LAW GROUP, LTD., with his First Amended Complaint, pursuant to Fed. R. Civ. P. 15(a), against Defendant, DIVERSIFIED ADJUSTMENT SERVICE, INC, states as follows:

**NATURE OF THE ACTION**

1.      This is an action brought by a consumer seeking redress for violation(s) of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. and the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*.

**JURISDICTION AND VENUE**

2.      Subject matter jurisdiction exists over the Fair Debt Collection Practices Act claim(s) under 15 U.S.C. § 1692k(d) and 28 U.S.C. §§ 1331 and 1337.

3.      Subject matter jurisdiction exists over the Telephone Consumer Protection Act claim(s) under 28 U.S.C. §§ 1331 and 1337.

1

4.     Venue is proper under 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to the claims took place in the District of Colorado.

## PARTIES

5.     BRICE FITCH ("Plaintiff") is a natural person, over 18-years-of-age, who at all times relevant resided at the property commonly known as 2155 South Havana Street, Aurora, Colorado 80014.

6.     Fitch is a "consumer" as defined by 15 U.S.C. § 1692a(3).

7.     DIVERSIFIED ADJUSTMENT SERVICE, INC. ("DAS"), operates as an accounts receivable management company in the United States.  It provides third-party debt collection services and credit bureau reporting to companies.  The company's services include pre-collect demand letters, skip-tracing, and receivables management.  Its services also include automated debt recovery, predictive dialing technology, integration, and online access.  The company was founded in 1981 and is based in Coon Rapids, Minnesota.

8.     DAS is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

9.     DAS uses instrumentalities of interstate commerce and the mail in its business – the principal purpose of which is the collection of debt owed or due or asserted to be owed or due another.

## FACTUAL ALLEGATIONS

10.    Fitch started electric and/or gas service(s) with Xcel Energy.

11.    Upon information and belief, Fitch provided Xcel Energy with his cellular telephone number ending in 5214 at the time he started electric and/or gas service(s) with Xcel Energy.

2

12.  Fitch accrued a past due balance.

13.  Fitch's past due balance was placed with DAS for collection activities.

14.  DAS began placing collection calls to Fitch.

15.  On December 22, 2017, Fitch answered a collection call from DAS, Fitch demanded that they stop calling, and requested that future communication be made in writing.

16.  When Fitch answered the aforementioned collection call from DAS, he was greeted by a pause, click and dead air before being connected to a live representative.

17.  Fitch's demand that DAS cease calls to his cellular telephone fell on deaf ears as DAS continued to place calls to Fitch's cellular telephone 3-4 times per week.

18.  In total, DAS placed no less than 25 calls to Fitch's cellular telephone after he asked that the calls cease.

19.  At all times relevant, Fitch was the sole operator, possessor, and subscriber of the cellular telephone number ending in 5214.

20.  At all times relevant, Fitch was financially responsible for his cellular telephone equipment and services.

## DAMAGES

21.  DAS's unconsented-to calls have severely disrupted Fitch's everyday life and overall well-being.

22.  DAS's unconsented-to calls have resulted in intrusion and occupation of Fitch's cellular services, thus impeding receipt of other calls.

23.  DAS's unconsented-to calls have resulted in unnecessary depletion of Fitch's cellular battery requiring him to incur electricity charges to recharge his cellular telephone.

24. DAS's telephone harassment campaign and illegal collection activities have caused Fitch actual harm, including but not limited to, invasion of privacy, nuisance, loss of subscribed minutes, intrusion upon and occupation of Fitch's cellular telephone capacity, wasting Fitch's time, the increased risk of personal injury resulting from the distraction caused by the phone calls, decreased work productivity, aggravation that accompanies unsolicited telephone calls, emotional distress, mental anguish, anxiety, loss of concentration, diminished value and utility of telephone equipment and telephone subscription services, the loss of battery charge, and the per-kilowatt electricity costs required to recharge his cellular telephone as a result of increased usage of his telephone services.

25. Concerned about the violations of his rights and invasion of his privacy, Fitch sought counsel to file this action to compel DAS to cease its unlawful conduct.

## COUNTS FOR RELIEF

### COUNT I:
### Fair Debt Collection Practices Act – (15 U.S.C. § 1692 *et seq*.)

26. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

27. Fitch's past due balance is a "debt" as defined by 15 U.S.C. § 1692a(5).

28. DAS is attempting to collect a debt used for "personal purpose" as defined by 15 U.S.C. § 1692a(5).

**a.      Violation(s) of 15 U.S.C. § 1692d(5)**

29. Section 1692d(5) prohibits a debt collector from causing a telephone to ring continuously with the intent to annoy, abuse, or harass.

30.    DAS violated 15 U.S.C. §1692d(5) by making no less than 15 collection calls to Fitch's cellular telephone over a 34 day period from December 22, 2017 to January 25, 2018, despite having been told to stop calling.

31.    Fitch may enforce the provisions of 15 U.S.C. § 1692d(5) pursuant to section k of the Fair Debt Collection Practices Act (15 U.S.C. § 1692k) which provides "any debt collector who fails to comply with any provision of [the Fair Debt Collection Practices Act] with respect to any person is liable to such person in an amount equal to the sum of -

(1)    any actual damage sustained by such person as a result of such failure;

(2)

        (A)    in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000.00; or

(3)    in the case of any successful action to enforce the foregoing liability, the costs of the action, together with reasonable attorney's fees as determined by the court.

WHEREFORE, Fitch requests the following relief:

a.    find that DAS violated 15 U.S.C. §§ 1692d(5);

b.    award actual, and statutory damages, and costs of this action including expenses together with attorneys' fees as determined by this Court; and

c.    grant any other relief deemed appropriate and equitable.

## COUNT II:
### Telephone Consumer Protection Act (47 U.S.C. § 227 *et seq*.)

32.    All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

33. DAS placed or caused to be placed non-emergency calls, including but not limited to the aforementioned unconsented-to calls, to Fitch's cellular telephone number ending in 5214 utilizing an automatic telephone dialing system ("ATDS") without Fitch's consent in violation of 47 U.S.C. §227 (b)(1)(A)(iii).

34. In a 2003 declaratory ruling the Federal Communications Commission ("FCC") concluded that equipment which has the capacity to "store or produce numbers and dial those numbers at random, in sequential order, from a database of numbers" qualifies as an ATDS under the statute.  18 F.C.C.R. 14014, 14091-93 (2003).

35. In 2012, the FCC stated that a predictive dialer included "any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists."  27 F.C.C.R. at 15392 n. 5 (2012).

36. In its Order, the FCC "reiterate[d] that predictive dialers, as previously described by the commission, satisfy the TCPA's definition of an 'autodialer.'"  *Id.*

37. Upon information and belief, based on the lack of prompt human response during the aforementioned call Fitch answered, DAS employed a predictive dialer to place calls to Fitch's cellular telephone number ending in 5214

38. Upon information and belief, the predictive dialing system employed by DAS transfers the call to a live representative once a human voice is detected, thus resulting in a pause after the called party speaks into the phone.

39.   DAS violated the TCPA by placing no less than 15 phone calls to Fitch's cellular telephone number ending in 5214 from December 22, 2017 through the January 25, 2018 utilizing an ATDS without Fitch's consent.

40.   As pled above, any previous consent, if any, was revoked by Fitch on December 22, 2017; and therefore, DAS did not have consent to place calls to Fitch's cellular telephone number ending in 5214.

41.   As pled above, Fitch was severely harmed by DAS's collection calls to his cellular telephone.

42.   Upon information and belief, DAS has no system in place to document and archive whether it has consent to continue to contact consumers on their cellular telephones.

43.   Upon information and belief, DAS knew its collection practices were in violation of the TCPA, yet continued to employ them to increase profits at Fitch's expense.

44.   At all times relevant, DAS acted through its agents, employees, and/or representatives.

45.   As a result of DAS's violations of 47 U.S.C. § 227 *et seq*., Fitch is entitled to receive no less than $500.00 in statutory damages, for each and every violation.

46.   As a result of DAS's *knowing and willful violations* of 47 U.S.C. § 227 *et seq*., Fitch is entitled to receive no less than $1,500.00 in treble damages, for each and every violation.

WHEREFORE, Fitch requests the following relief:

a.   find that DAS violated the TCPA;

b.   enjoin DAS from placing any further calls to Fitch's cellular telephone in the future;

c.   award statutory damages of at least $500.00, and treble damages of $1,500.00, for each and every violation; and

    d.      grant any other relief deemed appropriate and equitable.

**Plaintiff demands trial by jury.**

February 23, 2018                                        Respectfully submitted,

                                                                         _/s/ Joseph Scott Davidson_

                                                                     Joseph Scott Davidson
Mohammed Omar Badwan
**SULAIMAN LAW GROUP, LTD.**
2500 South Highland Avenue
Suite 200
Lombard, Illinois 60148
+1 630-575-8181
jdavidson@sulaimanlaw.com
mbadwan@sulaimanlaw.com

_Counsel for Brice Fitch_

8